IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RICHARD LOVATO and
DIANE JARAMILLO, as Co-Personal
Representatives of Raymond V. Lovato,
Deceased,

       Plaintiffs,

vs.

                                       Civ. No. 03-0629 MV/WDS

KELVIN L. BANISTER, and LANDSTAR
RANGER, INC.,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendants Kelvin L. Banister and Landstar Ranger, Inc.'s Motion for Summary Judgment, filed May 20, 2004 **[Doc. No. 56]**. The Court, having considered the motion, briefs, and relevant law and being otherwise fully informed, finds that the motion is not well taken and will be **DENIED**.

BACKGROUND

This case, over which the Court has diversity jurisdiction pursuant to 28 U.S.C. Section 1332,[1] arises out of an automobile accident on April 28, 2002, involving decedent Raymond V. Lovato ("Decedent") and Defendant Kelvin L. Banister ("Defendant Banister"). The Court

---

[1] Plaintiffs Richard Lovato and Diane Jaramillo, co-personal representatives of decedent Raymond V. Lovato, are residents of New Mexico. Prior to his death, decedent also was domiciled in New Mexico. Defendant Kelvin L. Banister is domiciled in San Diego, California. Defendant Landstar Ranger, Inc. is a Delaware corporation with its principal place of business in Jacksonville, Florida. Plaintiffs and Defendants are citizens of different states, and the amount in controversy exclusive of interests and costs exceeds the sum of $75,000. *See* 28 U.S.C. § 1332.

summarizes below the material facts in this case.[2]

At approximately 3:35 a.m. on April 28, 2002, Decedent was driving a black 1998 Oldsmobile Intrigue in a westbound lane of Interstate 40 near mile marker eighteen in Gallup, New Mexico. The sky was clear and the moon was full. Alyssa Duran, Yvette Edwards, and Robert Pablo, were passengers in the vehicle.

In this rural area, Interstate 40 is a four-lane divided highway, with two westbound lanes, and a speed limit of 65 miles per hour. The interstate does not have direct interstate lighting. The Oldsmobile was equipped with amber reflectors on the corner of its turn signal lights. The parties dispute whether large lighted signs from a nearby truck stop increased the ambient light in the area.

Decedent began to swerve the Oldsmobile in and out of the right and left westbound lanes of Interstate 40. Decedent was driving in excess of the speed limit. Decedent lost control of the vehicle causing it to impact a north guardrail twice before coming to a stop on a bridge over the dry Rio Puerco riverbed. The stopped vehicle occupied either the right lane of the interstate or the right lane and part of the left lane of the interstate. A toxicology report indicates that Decedent had a blood alcohol content of .218%.

After the collision with the guardrail, Decedent and the passengers exited the vehicle. The parties dispute whether the vehicle's head and tail lights were operative at this time. Passenger Edwards testified that only one of the Oldsmobile's headlights was out prior to the time the tractor-trailer collided with the vehicle. Passenger Duran, however, testified that both headlights and tail lights were inoperative. Defendants' expert report indicates that it is "probable" that the

---

[2] Except where specifically noted, the facts set forth herein are undisputed.

Oldsmobile's tail lights were illuminated during one of the contacts to the vehicle's left rear. The report also indicates that it is "possible" that the left side tail light assembly was disabled in the second guardrail contact. The report does not rule out the possibility that the tail light may have been operative after the collisions with the north guardrail.

After Decedent and the three passengers exited the vehicle, passenger Duran testified that a "couple of cars started coming." The cars did not collide with the Oldsmobile. Instead, they drove around the vehicle. At some point thereafter, passengers Duran and Edwards left the scene of the accident and began walking towards Gallup.

That same morning, Defendant Banister, a truck driver employed by or acting as an agent of Defendant Landstar Ranger, Inc., was driving a tractor-trailer in the westbound lanes of Interstate 40 near mile marker eighteen. At approximately 3:35 a.m., Defendant Banister's tractor-trailer struck the 1998 Oldsmobile where it was stopped in one or more of the westbound lanes of traffic. At the time of the collision, the tractor-trailer was moving from the right lane to the left lane. Defendants' expert report indicates that the tractor-trailer's pre-impact speed was roughly 65 miles per hour. No evidence, such as the presence of skid marks, indicates that Defendant Banister attempted to brake or otherwise stop the tractor-trailer prior to impact with Decedent's vehicle.

After the tractor-trailer collided with the Oldsmobile, Decedent was found, deceased, below the bridge in the dry Rio Puerco riverbed. Sergeant John Kendall, one of the officers present at the scene of the accident, questioned passenger Pablo to determine whether Decedent jumped over the embankment or whether the Oldsmobile struck Decedent and caused him to fall over the embankment. Passenger Pablo indicated that Decedent was hit by the Oldsmobile.

Sergeant Kendall testified that Decedent was found, not wearing pants, on the riverbed floor. Officers located Decedent's pants approximately fifteen feet east of Decedent's body. According to Sergeant Kendall, who has experience as a medical investigator and an accident investigator, a pedestrian hit by a moving vehicle frequently can be stripped of his or her shoes or other clothing.

In contrast, the autopsy report from the Office of the Medical Investigator indicates that "the lack of impact sites on [Decedent's] legs or torso is inconsistent with th[e] story" "that the [D]ecedent was . . . struck by the car after collision with the semi-truck." The report concludes that "the manner of [Decedent's] death is best classified as undetermined" because "it is not known whether the decedent jumped over the embankment to avoid the car, fell over the embankment before the collision of the truck with the car[,] or fell into the ravine by some other manner."

## STANDARD

Summary judgment generally is appropriate when a court determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted). To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998). "'Instead, the movant only bears the initial burden of 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits,

4

or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citation omitted); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When there is no genuine issue of material fact in dispute, a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). A plaintiff, however, cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, but rather must produce some specific factual support for its claim. *See Pueblo v. Neighborhood Health Centers, Inc.*, 847 F.2d 642, 649 (10th Cir. 1988).

## DISCUSSION

Defendants move for summary judgment on two grounds. First, Defendants argue that the uncontroverted material facts demonstrate that Defendant Banister acted reasonably and did not breach his duty of care. Second, Defendants argue that the evidence does not demonstrate that Defendant Banister's breach of duty, if any, was the proximate cause of Decedent's injuries. For both of these reasons, Defendants maintain that they are entitled to judgment in their favor as a matter of law. The Court will address each of Defendants' arguments in turn.

I.        <u>Breach of Duty of Reasonable Care</u>.

In New Mexico, to prevail on a negligence claim, a plaintiff must prove, among other things, that a defendant breached his or her duty of reasonable care.[3] *See, e.g.*, *Tafoya v. Seay Bros. Corp.*, 119 N.M. 350, 352, 890 P.2d 803, 805 (N.M. 1995) (traditional requirements for a cause of action founded upon negligence are duty, breach, proximate causation, and damages) (citation omitted). Defendants seek summary judgment on the ground that Plaintiffs cannot prove breach of duty as a matter of law.

To satisfy their initial summary judgment burden, Defendants must show that there is an absence of evidence to support Plaintiffs' claim that Defendant Banister breached his duty of reasonable care when the tractor-trailer he was driving struck Decedent's Oldsmobile. *See, e.g.*, *Celotex*, 477 U.S. at 325. According to Defendants, the undisputed facts demonstrate that (i) Decedent's vehicle was black and was blocking the entire right lane and possibly part of the left lane of traffic on Interstate 40, (ii) the posted speed limit in the area of the accident was 65 miles per hour, (iii) the tractor-trailer's pre-impact speed was roughly 65 miles per hour, (iv) the accident occurred during the night at approximately 3:35 a.m. on a portion of the interstate with no lighting, and (v) at the time of the collision the tractor-trailer was moving from the right to the left lane of traffic in an attempt to avoid the stopped Oldsmobile.

To withstand summary judgment on the basis of these uncontroverted facts, Plaintiffs must "designate 'specific facts showing that there is a genuine issue for trial'" on the question of breach of duty. *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To satisfy this burden, Plaintiffs argue that a

---

[3] In a diversity action, the Court applies the substantive law of the forum state. *See Novell, Inc. v. Federal Ins. Co.*, 141 F.3d 983, 985 (10th Cir. 1998) (citation omitted).

material dispute of fact exists regarding the lighting at the accident scene.  Although Defendants maintain that there was "no lighting of any sort" at the accident site, Plaintiffs point to evidence demonstrating that ambient light and other sources of light were present.  For example, Plaintiff Jaramillo alleges that large lighted signs from a nearby truck stop increased the ambient light at the accident site.[4]  In addition, Plaintiffs point to evidence establishing that (i) the sky was clear and the moon was full on the night of the accident, (ii) the tail lights on the Oldsmobile may have been operational up until Defendant Banister's tractor-trailer struck the Oldsmobile, and (iii) the amber reflectors on the Oldsmobile's tail lights would have reflected the light from the tractor-trailer's headlights.

Based on these facts, Plaintiffs argue that there is a genuine issue for trial on the question of breach of duty and that the Court must deny the motion for summary judgment.  The Court agrees.  The presence or absence of lighting, ambient or otherwise, at the scene of the accident is a material disputed fact that presents a triable issue for the jury.

Defendants argue that even if Plaintiffs' facts regarding lighting are taken as true for

---

[4] Defendants argue that the Court should not consider Plaintiff Jaramillo's affidavit because it is not supported by personal knowledge and it is conclusory and self-serving.  The Court disagrees.  First, the affidavit is supported by personal knowledge.  In the affidavit, Plaintiff Jaramillo states that she "visited and observed the scene of the accident shortly after the accident occurred," has "driven on that section of roadway many times[] during the day and at night," and is "familiar with the roadway and surrounding area."  She need not have witnessed the accident itself to have personal knowledge of the ambient light on Interstate 40 where the accident took place.  Because she attests to the ambient light that she generally has observed and does not set forth conjecture about the light that actually was present the night of the accident, the affidavit is based on her personal knowledge.  *See, e.g.*, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989).  Second, the affidavit is neither conclusory nor self-serving.  Although Plaintiff's affidavit, like most affidavits submitted on behalf of a party, advances her cause, the affidavit also is relevant, fact specific, and based on personal knowledge.  The Court has no reason, and Defendants have not provided any legally cognizable reason, to strike the affidavit from the Court's consideration.

purposes of the motion for summary judgment, the Court nonetheless can enter judgment in favor of Defendants as a matter of law. According to Defendants, the facts demonstrate as a matter of law that Defendant Banister exercised ordinary care. Although a reasonable juror might find that Defendant Banister exercised ordinary care under the circumstances, the Court cannot say that no reasonable juror could find that Defendant Banister breached his duty of care under the circumstances.

To the contrary, as described herein, a reasonable juror could conclude that even though it was dark outside, Decedent's vehicle was black and was blocking at least one lane of the interstate, and Decedent was not speeding, the presence of ambient light and other sources of light in the area would have enabled a reasonable driver to see the stopped vehicle and avoid a collision. Such a juror also might conclude that the evidence of at least two, if not more, drivers passing Decedent's vehicle stopped in the middle of the interstate without incident lends further support to the unreasonableness of Defendant Banister's actions. Furthermore, even if the juror did not believe that a reasonable driver would have identified the stopped vehicle in time to avoid a collision, the juror might believe that a reasonable driver should have attempted to brake or swerve around the stopped vehicle prior to, and not the same time as, the collision with the vehicle. Here, the evidence does not indicate evasive action of this sort.[5] Where reasonable minds might differ on the question of breach of duty, the matter is an issue for the jury. *See, e.g.*,

---

[5] Defendants' expert report indicates that the tractor-trailer struck the Oldsmobile at approximately 65 miles per hour, which was the full speed limit on that portion of the interstate. Nowhere in the report (or elsewhere in the record) is there evidence of skid marks indicating that Defendant Banister attempted to stop the tractor-trailer prior to the collision. The report only indicates that at the time of the collision (but not prior to the collision) the tractor-trailer moved from the right to the left lane.

*Perkins v. Chris Hunt Water Hauling Contr.*, No. 01-6129, 2002 U.S. App. LEXIS 15324, *20 (10th Cir. July 29, 2002) (unpublished decision); *see also Johnston v. Sunwest Bank of Grant County*, 116 N.M. 422, 426, 863 P.2d 1043, 1047 (N.M. 1993) (where "'reasonable minds may reach different conclusions, issue[s] of negligence and proximate cause constitute factual questions for the fact finder'") (citation omitted).  Accordingly, the Court denies Defendants' motion for summary judgment on this ground.

II.     Causation.

In a negligence action, a plaintiff must prove that a defendant's breach of duty proximately caused his or her injuries.  *See, e.g.*, *Torrez v. El Paso Elec. Co.*, 127 N.M. 729, 736, 987 P.2d 386, 393 (N.M. 1999) (citing N.M. Rules Ann. U.J.I. 13-302B), *overruled on other grounds by Herrera v. Quality Pontiac*, 73 P.3d 181 (N.M. 2003).  "A proximate cause of an injury is that which in a natural and continuous sequence . . . produces the injury, and without which the injury would not have occurred.  It need not be the only cause, nor the last nor nearest cause.  It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury."  *Id.* (quoting N.M. Rules Ann. U.J.I. 13-305).  The question of causation can be determined as a matter of law.  *See, e.g.*, *Fitzgerald v. Valdez*, 77 N.M. 769, 775, 427 P.2d 655, 659 (N.M. 1967) (citation omitted).  Where reasonable minds might differ on the question of causation, however, the matter is an issue for the jury.  *See, e.g.*, *id.* (citations omitted).

Defendants move for summary judgment on the ground that Plaintiffs cannot prove that Defendant Banister's alleged negligence caused Decedent's injuries.  To prove proximate cause, a plaintiff must "show by a preponderance of the evidence that [a] defendant's negligence resulted [in injury]. . . .  The plaintiff is not required to prove causation to an absolute certainty.  Rather,

9

the probability of a causal link . . . must be supported by the weight of the evidence . . . [, *i.e.*,] the plaintiff must introduce evidence that the injury more likely than not was proximately caused by the act of negligence." *Alberts v. Schultz*, 126 N.M. 807, 814, 975 P.2d 1279, 1286 (N.M. 1999) (internal and additional citations omitted).  Defendants argue, however, that Plaintiffs must "establish to a reasonable degree of medical probability" that the Oldsmobile, which was set into motion when the tractor-trailer collided with it, struck Decedent and caused him to be thrown over the bridge and onto the riverbed floor.  According to Defendants, the only medical evidence in the case indicates that the lack of impact sites on Decedent's legs or torso is inconsistent with Plaintiffs' argument that decedent was struck by the Oldsmobile after the tractor-trailer collided with it.

     Although Plaintiffs must demonstrate that a reasonable juror could find proximate causation by a probability as opposed to possibility, *i.e.*, that Defendant Banister's breach of duty more likely than not resulted in Decedent's death, *see Alberts*, 126 N.M. at 814, 975 P.2d at 1286, Plaintiffs need not, as Defendants suggest, demonstrate that a juror would find causation by a reasonable degree of *medical* probability.  The medical probability standard applies with respect to any medical testimony that a plaintiff may introduce to establish proximate causation.  *See, e.g.*, *id.*, 975 P.2d at 1286; *compare id.* (considering adequacy of medical expert testimony to determine whether physician treated patient in negligent manner); *Martinez v. CO2 Servs., Inc.*, No. 00-2218, 2001 U.S. App. LEXIS 6195, *18-19 (10th Cir. Apr. 12, 2001) (considering adequacy of medical expert testimony to determine whether medical condition of sleep apnea caused vehicular accident) (unpublished decision); *Higgins v. Martin Marietta Corp.*, 752 F.2d 492, 496 (10th Cir. 1985) (considering sufficiency of medical expert testimony to evaluate

plaintiff's respiratory disorders) (citations omitted). This standard does not require a plaintiff in a wrongful death action involving a vehicular accident seeking to withstand summary judgment on the issue of causation to introduce medical evidence sufficient to prove medical probability. *See Alberts*, 126 N.M. at 814, 975 P.2d at 1286; *see also Romero v. State of New Mexico*, 112 N.M. 291, 300, 814 P.2d 1019, 1028 (N.M. Ct. App. 1991) ("automobiles and highways are sufficiently familiar to the ordinary citizen that in general we would not require a finding of . . . causation to be predicated on an expert opinion that a particular factor was a probable cause of the accident"), *rev'd on other grounds*, 112 N.M. 332, 815 P.2d 1212 (N.M. 1993); *id.* at 300-01, 814 P.2d at 1028-29 ("expert testimony is not a necessary predicate for testimony concerning how particular factors could contribute to an accident").

Plaintiffs have pointed to specific facts that raise a question for the jury on the issue of proximate causation. Plaintiffs' evidence raises more than a mere possibility that Decedent was thrown over the bridge as a result of Defendant Banister's collision with the Oldsmobile. Specifically, Plaintiffs refer to an eyewitness statement by passenger Pablo to Sergeant Kendall taken at the scene of the accident. In that statement, Pablo indicates that Decedent was thrown over the embankment when he was struck by the Oldsmobile. Furthermore, Sergeant Kendall testified that the facts that (i) Decedent was not wearing his pants when he was found deceased on the riverbed floor and (ii) his pants were lying approximately fifteen feet to the east of Decedent's body are consistent with an accident involving a motor vehicle and a pedestrian.[6] This

---

[6] Defendants argue that Sergeant Kendall's testimony is mere speculation and not sufficient to show medical probability. As described here, Plaintiffs need not prove medical probability through Sergeant Kendall. Plaintiffs only need designate specific facts from which a reasonable juror could conclude that proximate causation was more probable than not. Plaintiffs can rely upon Sergeant Kendall's experience as an accident investigator and a medical investigator

evidence is sufficient to raise a material question of fact on the issue of causation for the jury.[7]

The Court is not persuaded otherwise by the medical evidence in this case. Although the autopsy report indicates that the injuries on Decedent's person are inconsistent with the theory that the Oldsmobile struck Decedent and caused him to fall over the bridge embankment, a reasonable juror nonetheless could find, based on the eyewitness statement of passenger Pablo, that it was precisely this turn of events that caused Decedent's death. Alternatively, a reasonable juror could determine that Decedent chose to jump over the embankment when faced with the risk of being struck by the Oldsmobile. In either event, the juror could conclude that Defendant Banister's breach of duty was the proximate cause of Decedent's injuries. Although a reasonable juror could disagree with these theories, where reasonable minds might differ on the question of causation the Court must reserve the matter for the jury. *See, e.g.*, *Fitzgerald v. Valdez*, 77 N.M. 769, 775, 427 P.2d 655, 659 (N.M. 1967) (citation omitted). The Court therefore denies summary judgment on this ground as well.[8]

---

to satisfy this burden. Sergeant Kendall need not be a medical expert to testify that pedestrians often are stripped of their clothing as a result of being struck by moving vehicles. His testimony in this regard is based not on speculation but rather on his experience with pedestrian accidents. Even if the Court did not consider his testimony regarding Decedent's pants, however, the Court nonetheless would consider his testimony regarding the statement he took from passenger Pablo immediately after the accident. This eyewitness statement alone is sufficient to raise a genuine issue of fact for the jury.

[7] Plaintiffs also argue that Decedent's physical injuries support the conclusion that Decedent was struck by the Oldsmobile and knocked over the guardrail. Plaintiffs, however, provide no testimony to support this claim, and conclusory allegations are not sufficient to withstand a motion for summary judgment. *See Pueblo v. Neighborhood Health Centers, Inc.*, 847 F.2d 642, 649 (10th Cir. 1988). Accordingly, the Court will not consider Plaintiffs' claim in this regard.

[8] The Court has denied Defendants' motion for summary judgment on substantive grounds. The Court therefore need not consider Plaintiff Lovato's argument that the motion for

## CONCLUSION

**IT THEREFORE IS ORDERED** that Defendants' Motion for Summary Judgment, filed May 20, 2004, **[Doc. No. 56]**, is **DENIED**.

Dated this 30th day of August, 2004.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff Richard Lovato:

>William G. Stripp, Esq.

Attorney for Plaintiff Diane Jaramillo:

>Cynthia A. Braun, Esq.

Attorney for Defendants:

>Robert T. Booms, Esq.

---

summary judgment should be barred because it was untimely.